UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| United States of America, | Case No.: 2:17-cr-00142-JAD-VCF |
|---|---|
| Plaintiff | **Order denying defendant's motions for judgment of acquittal and for transcripts, and ordering the government to show cause why count 3 should not be dismissed** |
| v. | |
| Brian Wright, | [ECF Nos. 139, 149, 152] |
| Defendant | |

Brian Wright was found guilty of three counts of assault of a federal officer after a two-day jury trial.[1] The evidence at trial showed that Wright attempted to flee from his home by car when federal officers began to execute an arrest warrant and, in the process of pulling out of his garage, intentionally struck the police vehicle that was blocking his driveway. Wright now moves for a judgment of acquittal or, in the alternative, for a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure.[2] Because I find that a reasonable jury could have concluded that Wright forcibly assaulted the officer who took cover behind the vehicle that Wright struck, and because there is no merit to Wright's other arguments, I deny his motion.

However, in resolving this matter, it has come to my attention that the misdemeanor count of assault of a federal officer charged as count 3 is a lesser-included offense of the two felony convictions. I therefore direct the government to show cause why I should not disregard

---

[1] ECF Nos. 118 (minutes), and 123 (verdict).

[2] Although Wright represented himself at trial, he requested—and I approved—that his standby counsel be appointed for purposes of sentencing and appeal. ECF No. 150 (detailing this procedural history). But after his counsel timely filed the pending motion on his behalf, ECF No. 139 (motion), Wright resumed his self-representation, and I granted him leave and an extension of time to file a pro se supplement to his counseled motion, *see* ECF No. 150, which he did, ECF No. 149 (pro se supplement). The government filed a consolidated response, ECF No. 151, but Wright (still acting pro se) filed no reply.

Wright's conviction on the misdemeanor count and enter judgment only on the two felony counts.

## Background

During July 2016, Wright commenced federal supervised release stemming from a felon-in-possession conviction in a separate case before Judge Andrew Gordon.[3] In February 2017, Wright's probation officer, Todd Fredlund, successfully petitioned Judge Gordon for an arrest warrant on the basis that Wright had committed multiple state-law crimes while under supervised release in violation of the terms of release.[4] The probation office also informed Wright that it believed that he had violated these terms.[5]

The same day the warrant issued, FBI agents and local officers assigned to a federal task force surveilled Wright by following his car.[6] Wright eventually realized that he was being followed but nonetheless returned home early that evening.[7] Shortly after, task-force officers began executing the warrant by knocking and announcing their presence at the front door.[8] At the same time, Terry Oechslin, a local police detective and federally deputized task-force officer, parked his car at an angle on Wright's driveway with his front bumper about five feet from the

---

[3] *See* 2:14-CR-00357-APG-VCF.

[4] *Id*. at ECF Nos. 322 (petition), 323 (order granting petition), 324 (arrest warrant).

[5] ECF No. 134 (Officer Fredlund's testimony).

[6] ECF No. 132 at 188–193.

[7] Several agents testified at trial that they believed Wright was aware of their presence during the day. *E.g.*, ECF Nos. 132 at 191–92, 134 at 36. And while being transported days after his arrest, Wright spontaneously stated that he knew he was being followed that day. ECF No. 132 at 279–80.

[8] ECF No. 132 at 221 (Detective Oechslin's testimony).

garage door.[9] After the officers' knocks went unanswered for approximately one minute,[10] the garage door began to open.[11] Detective Oechslin yelled this fact out to the task force and, concerned for his own safety, got out of his car to take cover behind it.[12]

Once the garage door was fully open, Wright began pulling out of the garage in a black sedan.[13] Two of the FBI agents, with their guns drawn, began "issuing commands very loudly" for Wright to stop the car.[14] Wright nonetheless continued to pull out and took a wide turn, which Detective Oechslin opined at trial indicated that Wright was aware of his car on the driveway and was trying to avoid hitting the car in an attempt to flee.[15] Oechslin stated that he believed that, based on his own car's position, there was no way Wright could have avoided hitting it.[16] Oechslin therefore took a few steps back from his car, which Wright eventually struck.[17]

Agents then converged around Wright's car, guns drawn, and ordered him to put the vehicle in park and place his hands in the air.[18] Despite the agents' repeated commands, Wright continued to keep both hands on the steering wheel, which demonstrated (according to the

---

[9] *Id*. at 219.
[10] *Id*. at 222; ECF No. 134 at 39–40 (Special Agent Ryan Burke's testimony).
[11] ECF No. 132 at 221–22.
[12] *Id*. at 223.
[13] *Id*. at 224.
[14] ECF No. 134 at 328 (Burke's testimony).
[15] ECF No. 132 at 224–26.
[16] *Id*. at 225.
[17] *Id*. at 227.
[18] ECF No. 132 at 266 (FBI Special Agent Wainscott's testimony).

3

agents' testimony) that he was unwilling to cooperate and thus remained a threat to their safety.[19] Wright eventually complied, stepped out of his car, and was taken into custody.[20]

In mid-February 2017, the government filed a complaint, alleging one count of "Assaulting, Resisting, or Impeding Certain Officers or Employees" in violation of 18 U.S.C. § 111.[21] The grand jury later returned a one-count indictment with the same charge.[22] In early August 2018, less than a week before trial was set to begin, the government obtained a superseding indictment charging one misdemeanor and two felony counts of § 111, all stemming from Wright striking Detective Oechslin's car during the warrant execution.[23] On three different occasions, Wright was canvassed as to whether he wished to exercise his right under the Speedy Trial Act to continue trial for an additional 30 days, which he declined each time.[24] He ultimately submitted a handwritten waiver, representing that he consulted with his standby counsel, "carefully consider[ed]" his options, and ultimately decided that a speedy trial was of "the utmost importance to" him.[25] However, just before trial started, Wright orally moved to dismiss all charges, arguing that the superseding indictment alleged "three new charges" and that it was untimely.[26] The government countered that the superseding indictment merely addressed

---

[19] *Id*.
[20] *Id*. at 266–69.
[21] ECF No. 1.
[22] ECF No. 7.
[23] ECF No. 105.
[24] ECF Nos. 112, 116, 132.
[25] ECF No. 111.
[26] ECF No. 132 at 32.

4

"facial defects" in the initial indictment by breaking out the sole count into three charges.[27] I denied the motion on the record.

The case proceeded to trial with Wright acting pro se. At the close of the government's case-in-chief, he orally moved for acquittal under Rule 29, which I denied on the record.[28] The case was submitted to the jury mid-afternoon of the second day, and less than two hours later, the jury returned a guilty verdict on all three counts.[29] Wright now renews his motion for a judgment of acquittal and alternatively seeks a new trial.

## Discussion

**I.　There is no basis to award Wright a judgment of acquittal or new trial.**

Wright raises three distinct grounds for relief. First, he renews his argument that the superseding indictment was untimely and thus necessitates acquittal. He next challenges the sufficiency of the evidence that the government presented at trial to support the three charges against him. Finally, he argues that he could not have obstructed justice—an element of charge of assault of a federal officer with the intent to commit another felony—because there was no judicial proceeding pending at the time. I address each issue in turn.

**A.　The government timely filed the superseding indictment.**

Although Wright waived his right to a thirty-day extension for trial, he contends that the proximity of the superseding indictment to trial placed him in an untenable position of either giving up his constitutional right to a speedy trial or proceeding without delay and defending himself against ostensibly new charges.[30] Wright doesn't anchor his timeliness argument to any

---

[27] *Id.* at 35.
[28] ECF No. 118.
[29] *Id.*; ECF No. 123.
[30] ECF No. 139 at 5.

specific provision of the Speedy Trial Act (STA), but he supports his request for relief by citing to *United States v. Van Brady*,[31] which addressed 18 U.S.C. § 3161(b), a provision mandating that the government charge a defendant within 30 days of his arrest. In *Van Brady*, the government obtained a superseding indictment that added four new counts the Friday before trial and over three months after the original indictment issued.[32] Acknowledging that § 3161 does not explicitly address superseding indictments, the District Court for the Southern District of California surveyed out-of-circuit authority addressing this statutory ambiguity and rejected the contention that a superseding indictment could issue at any point before trial without violating the STA.[33] The court held that "when . . . information relating to additional counts is known well in advance of the date of the superseding indictment, the government must come forward with valid reasons as to why it delayed in seeking the additional counts against the defendants."[34]

Although the government here seeks to distinguish *Van Brandy* on its facts, it fails to cite subsequently decided Ninth Circuit precedent that explains the relationship between the STA and superseding indictments. In *United States v. Heldt*, the court rejected the "overbroad" "proposition that superseding indictments do not fall under the" STA.[35] However, the Ninth Circuit explained that the STA's 30-day window in § 3161(b) for obtaining an indictment applies only to the charges that a defendant is initially arrested for.[36] Thus, "[c]harges not included in the original complaint are not covered by the [STA] and are restricted only by 'the applicable

---

[31] *United States v. Van Brandy*, 563 F. Supp. 438 (S.D. Cal. 1983).
[32] *Van Brandy*, 563 F. Supp. at 438.
[33] *Id.* at 439–40.
[34] *Id.* at 440.
[35] *United States v. Heldt*, 745 F.2d 1275, 1280 n.9 (9th Cir. 1984).
[36] *Id.* at 1280–81.

6

statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety' under Rule 48(b)."[37] Citing to this holding, the Ninth Circuit later distilled the principle that "[a] charge contained in a superseding indictment [that] was not included in the original complaint does not violate the Speedy Trial Act."[38] Accordingly, "[a] superseding indictment issued before the original indictment is dismissed may issue more than thirty days after the arrest. Not all charges must be filed within the first thirty day period."[39] Here, because Wright has not asserted that the original indictment, which alleged the same § 111 charge contained in the complaint, was untimely filed, the STA did not bar the government from obtaining a superseding indictment more than 30 days after his arrest.[40]

But the question of whether the original indictment satisfied the STA's 30-day window is different than whether the government added new charges against a defendant impermissibly close to the start of trial.[41] Although Wright contends that the superseding indictment placed him in an untenable position, he fails cite any constitutional right or legal principle violated. To the

---

[37] *Id*. at 1281 (quoting *United States v. Pollock*, 726 F.2d 1456, 1463 (9th Cir. 1984)).

[38] *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1173 (9th Cir. 2002).

[39] *Id*. (quoting *United States v. Orbino*, 981 F.2d 1035, 1037 (9th Cir. 1992)); *see also* 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Criminal* § 834 (4th ed.) ("The [STA] does not specify its application to the filing of a superseding indictment with additional charges more than thirty days after arrest, but most courts find that the original indictment tolls the thirty-day time period and allow the additional charges.").

[40] An "arrest" under the STA refers to the combination of taking a defendant into custody and the filing of a criminal complaint. *United States v. Boyd*, 214 F.3d 1052, 1056 (9th Cir. 2000) ("[T]he arrest 'trigger' for § 3161(b) applies only to arrests made either directly on a complaint or followed immediately by a complaint.").

[41] *See Heldt*, 745 F.2d at 1281 ("Charges not included in the original complaint are not covered by the [STA] and are restricted only by 'the applicable statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety' under Rule 48(b).").

7

extent that his citation to *Van Brandy* is an implicit argument that I should require the government to "come forward with valid reasons as to why it delayed in seeking the additional counts," I decline to adopt this bright-line rule. *Van Brandy* predated the binding precedent discussed above, and its holding did not stem from the STA's text or Sixth Amendment case law. Accordingly, I find that the timing of Wright's superseding indictment is not a basis for dismissing the charges against him.

### B. There was sufficient evidence presented at trial that Wright forcibly assaulted Detective Oechslin.

Wright next challenges the sufficiency of the evidence supporting each of the three counts of assault of a federal officer. Rule 29 allows a court to overturn a jury's guilty verdict if "the evidence is insufficient to sustain a conviction."[42] In reviewing the sufficiency of the evidence at trial, courts must view the evidence in the light most favorable to the prosecution and ask only whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt.[43] Rule 33 gives trial courts broader authority to vacate a judgment and grant a motion for a new trial "if the interest of justice so requires."[44] In ruling on a Rule 33 motion, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."[45]

---

[42] Fed. R. Crim. P. 29(a).
[43] *United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir. 2009).
[44] Fed. R. Crim. P. 33(a).
[45] *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

8

Wright argues that the government failed to establish that he "forcibly assaulted" Detective Oechslin—an element common to all three counts.[46] As the jury was instructed, "[t]here is a forcible assault when one person [1] intentionally strikes another, or [2] willfully attempts to inflict injury on another, or [3] intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm."[47] Because Wright did not strike Oechslin's person, the government disclaimed the first avenue of establishing forcible assault and relied on the theory that, in his attempt to flee, Wright either attempted to injure Oechslin or to intentionally threaten the detective.[48] Conversely, Wright presented a narrative that he was unaware that agents were attempting to execute a warrant or that a car was blocking his driveway and that the collision was merely a car accident.[49]

But ample evidence presented at trial supported the government's theory and undercut Wright's. The jury heard uncontroverted testimony that Wright was told that the probation office believed he violated the terms of his supervised release, that he was aware he was being surveilled the day of his arrest, and that agents loudly knocked on his front door, announcing

---

[46] *See* 18 U.S.C. § 111(a). Wright concedes that Detective Oechslin was a federal officer for purposes of the warrant execution and that Wright's car could be considered a deadly weapon if used in an assault. ECF No. 139 at 5 n.14.

[47] ECF No. 120 at 3–5; Ninth Cir. Model Crim. Jury Instr. 8.3–8.4 (2018 update).

[48] ECF No. 134 at 149–50 (the government's closing argument). In his pro se supplement, Wright contends that he merely "bumped" into Detective Oechslin's vehicle and that his actions therefore cannot constitute assault. ECF No. 149 at 14. But this argument conflates the three avenues of establishing forcible assault under § 111.

[49] *See* ECF No. 134 (Wright's closing argument) at 156 ("No matter what the Government has said or will say, this is a simple case of me backin' outta my garage."), at 159 ("You saw the picture of my garage. I could not see out of it. How could I see that there was someone -- or something blocking my way?"), at 165 ("From the beginning of this case, this has been a simple fender bender."). Wright did not testify at trial.

9

their identity and intent to serve a warrant. And the notion that Wright was unaware that there was a car blocking his driveway is belied by the testimony that two agents loudly commanded that Wright stop his car as it began pulling out of the garage and that he made a wide turn to (in Detective Oechslin's view) avoid hitting the parked car.

Wright makes much of the fact that Oechslin testified that he believed Wright was "trying not to hit [his] car,"[50] implying that Wright was not attempting to injure or threaten the detective. But the jury also heard that Oeschslin believed that Wright was attempting to flee and that it was apparent that there was no way Wright could have maneuvered around Oeschslin's car. Additionally, the jury heard that, *after* the collision, Wright initially failed to comply with multiple commands from agents to put his car in park and place his hands in the air—thus supporting the notion that he was attempting to flee. Viewed in the light most favorable to the government, the jury reasonably could have inferred that Wright realized he could not escape without hitting Oeschslin's car and then formed the intent to either harm Oechslin (as the law-enforcement officer blocking his escape) or, at the minimum, threaten him and the other task-force officers in the vicinity by using his car as a weapon to facilitate his escape.[51]

Accordingly, I deny Wright's motion for a judgment of acquittal under Rule 29. And because I see no basis for granting a new trial, I deny his alternative request for relief under Rule 33.

---

[50] *E.g.*, ECF No. 139 (citing ECF No. 132 at 224).

[51] There also can be little doubt that Wright had "an apparent ability to inflict injury" with his car or that Detective Oechslin experienced "a reasonable apprehension of immediate bodily harm" given that Oechslin took cover behind his own car and then moved further way as Wright began backing out of the garage.

10

### C. The pending revocation of Wright's supervised release constituted a judicial proceeding.

The second count against Wright alleged that he assaulted a federal officer with the intent of committing another felony.[52] That felony, the government alleged, was that Wright attempted to obstruct justice under 18 U.S.C. § 1503, which "requires acts to thwart some aspect of the Government's judicial function. Consequently, a defendant can only be convicted under § 1503 if there is a pending judicial proceeding."[53] "Whether a judicial proceeding is pending at the relevant time is a question of law . . . ."[54] The government asserted at trial that the pending revocation of Wright's supervised release constituted a judicial proceeding,[55] a legal conclusion that Wright never challenged during the finalization of jury instructions.[56]

In his final ground for relief, Wright now contends that no hearing was scheduled at the time that Judge Gordon issued a warrant for his arrest and that no judicial proceeding was thus pending.[57] But this argument is foreclosed by *United States v. Weber*, in which the Ninth Circuit held that the probation office's "petition to revoke [the defendant's] supervised release in connection with [a prior conviction] and the issuance of a warrant for [his] arrest constituted the revival of proceedings in that case that were then pending" when the defendant sought to

---

[52] ECF No. 105.

[53] *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003).

[54] *Id.*

[55] ECF No. 134 at 154; ECF No. 120 at 5 (jury instructions) ("Obstruction of justice requires a pending judicial proceeding; a supervised-released revocation proceeding is a judicial proceeding.").

[56] ECF No. 134 at 78–84 (discussing jury instruction no. 7: obstruction of justice).

[57] ECF No. 139 at 16–17.

obstruct justice.[58] Wright also skirts the reality that a revocation hearing is not scheduled until after an arrest warrant is executed and the defendant is back in federal custody. And, as discussed above, the evidence shows that Wright attempted to flee from his home to evade arrest. I therefore deny his Rule 29 and 33 motion on all grounds.[59]

II. **The government must show cause why I should not enter judgment only on the two felony convictions.**

In the course of analyzing the parties' arguments, it has come to my attention that the third misdemeanor count of assault of a federal officer is a lesser-included offense of the two felony convictions. As the Ninth Circuit has explained on multiple occasions, "§ 111 defines three separate offenses . . . ."[60] The core offense is a misdemeanor that results when a defendant commits a "simple assault" against a federal officer.[61] However, when the assault "involve[s] physical contact with the victim of that assault *or* the intent to commit another felony" the offense becomes a felony punishable with up to eight years of imprisonment.[62] But if the

---

[58] *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003).

[59] In his pro se supplement, Wright once again argues that the government engaged in vindictive prosecution. ECF No. 149 at 6–7. I have addressed and rejected these precise unfounded accusations in an extensive order overruling his objections to the magistrate judge's report and recommendation, ECF No. 150, and I decline to address them further. Wright also asserts that the government committed a *Brady* violation by purportedly not disclosing a picture of the front of Detective Oechslin's car showing minimal damage. ECF No. 149 at 14. The government represents in its response that it did disclose the accident report and photos of the car in discovery. ECF 151 at 24 n.108. I consider Wright's failure to reply as a tacit concession of this point.

[60] *United States v. Rivera-Alonzo*, 584 F.3d 829, 833 (9th Cir. 2009) (citing *United States v. Chapman*, 528 F.3d 1215, 1219 (9th Cir. 2008)).

[61] *Id.*; 18 U.S.C. § 111(a) ("Whoever, forcibly assaults . . . any person designated in section 1114 of this title while engaged in or on account of the performance of official duties shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . . .").

[62] 18 U.S.C. § 111(a) (emphasis added).

defendant, in committing the assault, "uses a deadly or dangerous weapon . . . *or* inflicts bodily injury" the maximum sentence is enhanced to 20 years.[63] Because all felony iterations of assault of a federal officer require the government to prove all the same elements as the misdemeanor, simple-assault offense, in addition to another element, "simple assault is a lesser-included offense of both the 8-year and the 20-year felonies described in § 111."[64]

Here, count 1 alleged that Wright used a dangerous weapon—his car—to assault Detective Oechslin, and count 2 alleged that he committed the assault with the intent to commit another felony—obstruction of justice. Count 3 alleged misdemeanor simple assault stemming from the same conduct and is therefore a lesser-included offense of counts 1 and 2. In contrast, both felony offenses required the government to prove an element unique from the other, so it is permissible for Wright to be convicted and sentenced on both felonies. Although it was permissible for the government to *pursue* both its misdemeanor and felony theories at trial, the jury *convicted* Wright of all three counts; it therefore appears that I should dismiss the misdemeanor count and enter judgment only on the two felony offenses.[65] And the fact that both the government and probation office recommend that the sentence on the misdemeanor count run

---

[63] *Id.* § 111(b) (emphasis added).

[64] *Rivera-Alonzo*, 584 F.3d at 834; *see also United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008) ("To determine whether two statutory provisions prohibit the same offense, we must examine each provision to determine if it 'requires proof of a[n additional] fact which the other does not.' We also employ this analysis . . . to determine whether one offense is a lesser included offense of another." (alteration in original) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

[65] *See Ball v. United States*, 470 U.S. 856, 865 (1985) ("If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, [s]he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district should enter judgment on only one of the statutory offenses."); *see also Davenport*, 519 F.3d at 944, 947 (holding that *receiving* child pornography is the lesser-included offense of *possessing* child pornography and that the district court therefore plainly erred in entering judgment on both convictions stemming from the same conduct).

concurrent to the felonies does not change this conclusion because additional convictions can have adverse collateral consequences.⁶⁶ But because neither party has briefed this issue, I order the government to show cause why I should not enter judgment only on Wright's two felony convictions by January 17, 2019. Wright will have until January 30, 2019, to file a reply to the government's response. And because this issue—which may benefit Wright—cannot be fully briefed by the currently scheduled sentencing hearing on January 15, 2019, I continue that sentencing hearing to February 11 at 2 p.m.

**III.    I again deny Wright's motion for transcripts as premature and improper.**

Wright moves for transcripts from two hearings held in August 2018, contending that he needs them for purposes of an appeal and to file a complaint against his standby counsel with the Nevada State Bar.⁶⁷ As I explained in a recent order addressing the precise same request:

> To the extent that Wright desires these transcripts for an eventual appeal, this request is premature. Should he file an appeal, the process for requesting transcripts at the taxpayers' expense is governed by Rule 10(b) of the Federal Rules of Appellate Procedure. Wright will need to follow the steps outlined in that rule at the appropriate time. To the extent that he wants the transcripts to provide to the Nevada Bar during a complaint proceeding, that is not a purpose for which the Criminal Justice Act authorizes the expenditure of public funds.⁶⁸

For these same reasons, I once again deny Wright's motion for transcripts.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

- Wright's motion for a judgment of acquittal or, in the alternative, a new trial **[ECF Nos. 139, 149] is DENIED;**

---

⁶⁶ *Davenport*, 519 F.3d at 947.

⁶⁷ ECF No. 152.

⁶⁸ ECF No. 150 at 4 n.16 (citing 18 U.S.C. § 3006(a); 28 U.S.C. § 753(f); *United States v. Lucatero*, No. CR. S-05-0443 WBS, 2007 WL 1747077, at *1 (E.D. Cal. June 18, 2007)).

14

- Wright's motion for transcripts of hearing **[ECF No. 152] is DENIED**;

- The government must **show cause** why I should not enter judgment only on Wright's two felony convictions and dismiss the misdemeanor count **by January 17, 2018**. Wright will have **until January 30, 2019, to file a reply**.

- Good cause appearing, the January 15, 2019, sentencing hearing **is continued to February 11, 2019, at 2 p.m.**

Dated: January 11, 2019

_____
U.S. District Judge Jennifer A. Dorsey